FILED
2017 Mar-24  AM 11:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **JOEY HORTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:  1:15-cv-0933-JEO** |
| | ) | |
| **UNITED OF OMAHA LIFE** | ) | |
| **INSURANCE CO.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

In this action, Plaintiff Joey Horton ("Horton") brings a claim pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, challenging Defendant United of Omaha Life Insurance Company's ("United of Omaha") denial of his long-term disability and continuation of life insurance benefits claims.  (Doc. 1, ¶ 2 ("Complaint or "Compl.")).[1]  United of Omaha contends that Horton did not timely exhaust his administrative remedies as to its "final determination that he was no longer disabled under the terms of the applicable long-term disability policy" prior to filing this case.  (Doc. 31 at 1; *See also* Doc.

---

[1]References to "Doc. ___" are to the electronic numbers assigned by the Clerk of the Court.  Page references will be to the electronic page numbers at the top of the document unless noted otherwise.

1

32).[2]  On that basis, United of Omaha asks the court to enter judgment in its favor on its motion for summary judgment.  (Doc. 32).  For the reasons set forth below, the court finds the defendant's motion for summary judgment is due to be granted.

## I.     FACTUAL BACKGROUND[3]

For ten years, Horton, a 55-year old man, worked as a quality engineer at American Furuwaka, Inc.  (Doc. 1, ¶ 6).  He installed and repaired machinery and equipment for the company.  (*Id*.).  Horton suffers from "coronary artery disease, congestive heart failure, high cholesterol, dyslipidemia, hypertension, diabetes mellitus type II, peripheral neuropathy, joint pain, degenerative disc disease, chronic back pain, and depression."  (Doc. 36-1, ¶ 3).  According to Horton, he "take[s] medications that affect [his] everyday living and [his] ability to function."  (*Id*., ¶ 4).  Horton claims that his "disabilities force[d] him to stop working" at the company as of March 25, 2011.  (Doc. 1, ¶ 6).  And since that time, Horton maintains that he has been "critically ill," "hospitalized numerous times."  (Doc. 36-1, ¶¶ 5–6).

---

[2]Horton argues that his "claim for benefits under the life insurance policy is properly before the Court."  (Doc. 35, pp. 25–26).  United of Omaha did not specifically address this contention in its reply.  (*See* Doc. 37).  The court raised this issue with counsel in a telephone conference call. Counsel for United of Omaha agreed that this aspect of the case is properly before the court for substantive review.  This opinion concerns only Horton's long-term disability benefits claim, not his life insurance claim.

[3]Consistent with the summary judgment standard, the court presents the facts in the light most favorable to Horton.

### A. The Plan

As an American Furuwaka employee, Horton participated in the company's employee welfare benefit plan (the "Plan").  (Doc. 30-4, pp. 173-74).  United of Omaha administered the Plan.  (Doc. 1, ¶ 2; Doc. 32, ¶ 1).[4]  The Plan provided Horton with short-term disability ("STD"); long-term disability ("LTD"); life and accidental death and dismemberment insurance ("LADD"); and voluntary term life insurance ("VTLP").  (Docs. 30-2; 30-7; 30-16 & 17; 30-19; 40-1).[5]  Each policy of the Plan sets forth its coverage terms, as well as procedures for appealing adverse benefit determinations.  (Docs. 30-2; 30-7; 30-16 & 17; 30-19; 40-1).[6]  For instance, under the STD and LTD policies, an insured must "appeal within 180 days following [the] receipt of notification of an Adverse Benefit Determination."  (Doc. 30-2, p. 24; Doc. 30-7, p. 32).  According to United of Omaha, if an insured does not appeal an adverse benefits determination within United of Omaha's allotted timeframe, barring special circumstances, that decision is final and binding.  (Doc. 30-9, p. 3).

### B. Termination of STD and LTD Benefits

Not long after Horton stopped working at American Fukuwara, United of Omaha approved Horton's application for STD benefits.  (Doc. 30-4, pp. 173–176).

---

[4]It is undisputed that ERISA governs the Plan.  (Docs. 1, 30).

[5]The court refers collectively to Horton's LADD and VTLP policies as the "Life Policies."

[6]An "adverse benefit determination" means "a denial, reduction, or termination of, or failure to provide or make payment (in whole or in part) for a benefit . . . ."  (Doc. 30-2, p. 23).

From April 2, 2011 to September 30, 2011, United of Omaha paid Horton $600.93 per week in STD benefits. (Doc. 30-4, pp. 3–5, 7). But pursuant to the Plan, after United of Omaha pays an insured STD benefits for 26 weeks, an STD claim converts into an LTD claim. (Doc. 30-2, pp. 4, 11; Doc. 30-4, pp. 3–5). On October 1, 2011, Horton's STD claim converted into an LTD claim. (Doc. 30-4, pp. 3–5; Doc. 30-12, pp. 1–2; Doc. 30-11, p. 74). United of Omaha assigned Horton LTD claim number "111020007802." (Doc. 1-2, p. 2; Doc. 12, pp. 1-2; Doc. 30-9, p. 26).

After paying monthly LTD benefits to an insured for two years, under the LTD policy, United of Omaha will continue extending LTD benefits only if the insured is "disabled." (Doc. 30-7, p. 39). That is, an insured must be "unable to perform all the [m]aterial [d]uties of any [g]ainful [o]ccupation." (Doc. 30-7, p. 39). On November 15, 2013, after disbursing $833.01 per month in LTD benefits for two years to Horton, United of Omaha notified Horton by letter that it was terminating his LTD benefits. (Doc. 1-2; Doc. 30-9, pp. 26–31). In that letter, United of Omaha provided the LTD policy number and Horton's LTD claim number. (Doc. 1-2; Doc. 30-9, p. 26). Based on Horton's more recent medical records, United of Omaha determined that Horton was not disabled, as defined by the LTD policy. (Doc. 30-9, pp. 26–31). United of Omaha advised Horton not only of his right to appeal, but also the steps to do so. (Doc. 30-9, p. 30). In particular, United of Omaha's November 15, 2013 letter warned Horton that if it did not "receive [Horton's] appeal

within 180 days from the date [he] received t[he] [November 15, 2013] letter," the termination of his LTD benefits would be final.  (Doc. 30-9, p. 31).

## C. Life Insurance Benefits

While United of Omaha reviewed Horton's LTD claim, it considered simultaneously Horton's life waiver of premium benefits ("LWOP" or "life insurance benefits") claim under the Life Policies.  (Doc. 30-21, p. 30).  At first, United of Omaha determined that Horton qualified for a LWOP.  (Doc. 32, ¶ 15).  But in a March 19, 2013 letter, United of Omaha reversed that determination, concluding that Horton "no longer qualified for waiver of premium coverage based on the any occupation provisions of the policy."  (Doc. 30-21, pp. 42–45).  In other words, because Horton could "perform the physical and mental demands of a sedentary occupation" and was not "totally disabled," pursuant to the Life Policies, Horton was no longer eligible to receive life insurance benefits.  (*Id*., p. 42).  As with the November 15, 2013 LTD benefits termination letter, the March 19, 2013 LWOP termination letter informed Horton how to appeal United of Omaha's decision.  (*Id*. pp. 43–44).  The letter also listed in the subject line the Life Policies and Horton's LWOP claim number.  (*Id*., p. 42).

On April 22, 2013, Horton appealed United of Omaha's adverse LWOP determination, citing to the Life Policies' numbers.  (Doc. 30-21, p. 36).  The subject line says, "Appeal the Denial of Life Insurance," and the first line of Horton's appeal

states, "Please accept this as my appeal to the life insurance denial from Mutual of Omaha Life Insurance Company!"  (Doc. 30-21, p. 36).  On May 3, 2013, referencing the Life Policies and Horton's LWOP claim number, United of Omaha acknowledged receipt of Horton's LWOP appeal.  (Doc. 30-21, p. 65).  On December 10, 2013, Omaha upheld its denial of his LWOP claim.  (Doc. 1-3, pp. 2–4).  The letter references Horton's LWOP claim number; and the first line of the letter states that it concerns Horton's "appeal for continuation of life insurance benefits."  (*Id*., p. 2).  The letter concluded that the medical evidence in Horton's claim file did not support disability under the Life Policies and that the denial of LWOP benefits determination was final.  (*Id*., p. 4).  The letter informed Horton that he had exhausted his administrative remedies with regard to his LWOP benefits and that Horton had "the right to bring a civil action suit."  (*Id*.).

Horton contends that when he received United of Omaha's December 10, 2013 final decision letter relating to the Life Policies, he believed "that [the letter] related to all his claims with Omaha," including his STD and LTD claims. (Doc. 35, p. 6).  Horton states that he was "critically ill" and "frequently" hospitalized in 2013 and 2014, and that he was taking medication that affected his cognitive abilities as well as his memory, which, Horton alleges, affected his ability to appeal and impaired his reading comprehension.  (Doc. 36-1, ¶¶ 4–6).

Horton alleges that he retained legal counsel to pursue his LTD benefits shortly after being released from the hospital.  (Doc. 35, pp. 6, 22–23).  On August 22, 2014, Horton, through counsel, wrote to United of Omaha.  (Doc. 30-21, pp. 7–9).  In the subject line of that letter, it is undisputed that counsel for Horton referenced the Life Policies and Horton's LWOP claim number.  (Doc. 1-4, p. 2; Doc. 30-21, p. 7).  Counsel wrote that her firm had "been retained to represent Mr. Horton in his claim for disability benefits."  (Doc. 1-4, p. 2).  Horton sought "a copy of any Plan document that govern[s] [his] claim and all other documents that [Horton] must be furnished pursuant to a request under 29 U.S.C. § 1024(b)(4)."[7] (Doc. 1-4, p. 2).  In addition, Horton's August 22, 2014 inquiry requested that United of Omaha confirm whether Horton "has exhausted all administrative rights to appeal."  (*Id*., p. 2).  Furthermore, in the accompanying privacy release to the August 22, 2014 letter, although Horton cited to the Life Policies and his LWOP claim number, Horton wrote that he was "seeking a reassessment of my claim for Long Term Disability benefits."  (Doc. 1-4, p. 4; Doc. 30-21, p. 9).

On September 15, 2014, United of Omaha responded to Horton's August 22, 2014 letter, "providing information only for [Horton's] waiver of premium claims."

---

[7]29 U.S.C. § 1024(b)(4) requires a claims administrator to "upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  *Id*.

(Doc. 1-5; Doc. 35, pp. 6–7; Doc. 30-21, pp. 4–6).  That letter also confirmed that Horton had exhausted his appeal rights with respect to the Life Policies.  (Doc. 32, pp. 10–11; Doc. 35, pp. 6–7; Doc. 30-21, pp. 4–6).  But as with the subject line of Horton's August 22, 2014 letter, the reference line in Omaha's September 15, 2014 response letter dealt only with Horton's Life Policies and Horton's LWOP claim number.  (Doc. 1-5; Doc. 30-21, pp. 4–6).  The September 15, 2014 letter did not discuss Horton's STD or LTD policies.  (Doc. 1-5; Doc. 30-21, pp. 4–6).

### D.  Appeal of LTD Benefits

 On March 10, 2015, Horton appealed United of Omaha's termination of his LTD benefits.  (Doc. 1-6; Doc. 30-9, pp. 9–10).  In the subject line of Horton's letter, he referenced the LTD disability policy as well as his LTD policy number.  (Doc. 1-6; Doc. 30-9, p. 9).  Horton stated that, on December 10, 2013, while he received information related to the Life Policies, he did not receive information pertaining to his LTD claim.  (Doc. 1-6; Doc. 30-9, p. 9).  Horton also said that he had "previously requested that Mutual of Omaha clarify [Horton's] appeal rights on his disability claim."  (Doc. 1-6; Doc. 30-9, p. 9).  "[G]iven the apparent confusion," Horton requested copies of his disability claim file.   (Doc. 1-6; Doc. 30-9, pp. 9–10).  Horton also inquired about whether he had exhausted his administrative appeals with respect to his LTD benefits.  (Doc. 1-6; Doc. 30-9, pp. 9–10).

On March 20, 2015, United of Omaha upheld the denial of Horton's LTD claim for benefits. (Doc. 1-7; Doc. 30-9, pp. 1–5). The beginning of the letter referenced the LTD policy and Horton's LTD claim number. (Doc. 1-7; Doc. 30-9, pp. 1–5). United of Omaha stated:

> The adverse benefit decision was sent to Mr. Horton on November 15, 2013. As noted above, Mr. Horton had a period of 180 days from receipt of this letter to file an appeal. We have no record of an appeal being filed prior to or around May 14, 2014, 180 days after the adverse benefit decision.
>
> We are in receipt of your August 22, 2014, letter. This letter asked about [the Life Policies].
>
> The appeal for the [LTD] disability claim is dated March 10, 2015.
>
> Both the August 22, 2014, and March 10, 2015, letters were submitted well after the 180 days that Mr. Horton had to file an appeal for disability benefits. We are not able to accept and evaluate an appeal submitted after May 14, 2014.

(Doc. 1-7, p. 4; Doc. 30-9, pp. 3–4). Because Horton did not submit a timely LTD benefits appeal, United of Omaha wrote that it was "unable to accept and evaluate" Horton's late appeal. (Doc. 1-7; Doc. 30-9, pp. 3–4). United of Omaha advised Horton that he had "exhausted all administrative rights to appeal" and that the adverse LTD benefits decision was final. (Doc. 1-7, p. 5; Doc. 30-9, pp. 3–4). The letter informed Horton of his "right to bring a civil action . . . once all administrative rights to review have been exhausted." (Doc. 1-7, p. 5; Doc. 30-9, pp. 3–4).

On June 3, 2015, Horton filed this action against United of Omaha, contending that he was entitled to LTD benefits.  (Doc. 1).  Horton testified that—"[t]o the best of [his] knowledge"—he thought that he had complied with the steps that United of Omaha "told [him] to take to appeal the denial of [his] [LTD] disability benefits." (Doc. 36-1, ¶¶ 7–14).

## II.     SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a party is authorized to move for summary judgment on a claim or defense asserted by or against the movant.  Under that rule, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "Disposition of a summary judgment motion in a declaratory judgment action is governed by the same basic principles that generally rule the grant or denial of such a motion."  *Bingham, Ltd. v. United States*, 724 F.2d 921, 924 (11th Cir. 1984).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  Where the movant will not bear the burden of proof on a

claim or issue at trial, the movant can satisfy that burden by pointing to specific portions of the materials on file that either negate an essential element of the non-movant's claim or that affirmatively indicate "that the party bearing the burden of proof at trial will not be able to meet that burden." *Clark*, 929 F.2d at 608; *see also United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1438 n. 19 (11th Cir. 1991).  By contrast, when the moving party has the burden of proof at trial, it must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. *See Four Parcels*, 941 F.2d at 1438.  "In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *Id*.

Once the moving party has met its initial burden, the nonmoving party must "go beyond the pleadings" and refer the court to evidence demonstrating that there is a genuine issue for trial.  *Celotex Corp.*, 477 U.S. at 324.  In its review of the evidence, a court must credit the evidence of the non-movant and draw all justifiable inferences in the non-movant's favor.  *See Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000). At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

11

# III.   ANALYSIS

ERISA authorizes a civil action by a participant "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). But in this circuit, even though the text of ERISA itself does not mandate exhaustion, the "law is well-settled that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223 (11th Cir. 2008); *see also Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003). This court-imposed requirement is based on Congressional intent and statutory interpretation. *See Watts,* 316 F.3d at 1207. In *Mason v. Continental Group, Inc*., the Eleventh Circuit explained:

> Compelling considerations exist for plaintiffs to exhaust administrative remedies prior to instituting a lawsuit. Administrative claim-resolution procedures reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decision making process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated.

763 F.2d 1219, 1227 (11th Cir. 1985). Therefore, when a plaintiff fails to exhaust his administrative remedies by not filing a timely appeal, based on the Eleventh Circuit precedent, that claim is barred and the claims administrator's decision is final. *See Counts v. Am. Gen. Life & Acc. Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997).

In this case, Horton argues that he "exhausted his ERISA administrative remedies and is entitled to have his case heard before this court." (Doc. 35, p. 12). The court disagrees.  On November 12, 2013, United of Omaha informed Horton that he was no longer eligible for LTD benefits.  (Doc. 1-2; Doc. 30-9, pp. 26–31). The Plan required Horton to appeal the denial of his LTD within 180 days of receiving his termination letter.  (Doc. 30-7, p. 32).  Horton should have appealed the adverse LTD benefits decision by May 14, 2014.  (Doc. 1-7; Doc. 30-9, pp. 1–5; Doc. 30-7, p. 32).  Horton, however, did not do so.  He did not appeal the unfavorable LTD benefits determination until March 10, 2015.  (Doc. 1-6; Doc. 30-9, pp. 9–10). That is fatal.  Because Horton submitted an untimely LTD benefits appeal, pursuant to Eleventh Circuit precedent, he failed to exhaust his remedies.  *See Counts*, 111 F.3d at 108.  Accordingly, Horton is barred from suing United of Omaha for LTD benefits in federal court, and United of Omaha's LTD benefits decision is final and binding.

## A. Equitable Estoppel

Horton contends that United of Omaha should be estopped from asserting as a defense his failure to exhaust because, in United of Omaha's March 20, 2015 LTD final denial letter, United of Omaha informed Horton that he had exhausted his administrative remedies with regard to his LTD benefits and had a right to sue.  (Doc. 35, pp. 17–19).  This argument is not persuasive.  To succeed under the Eleventh

Circuit's "very narrow common law doctrine under ERISA for equitable estoppel," Horton must "show that (1) the relevant provisions of the plan at issue are ambiguous, and (2) the plan provider or administrator has made representations to Horton that constitute an informal interpretation of the ambiguity." *Jones v. Am. Gen. Life & Acc. Ins. Co.*, 370 F.3d 1065, 1069 (11th Cir. 2004); *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir. 1994) (citation omitted); *see also Braden v. Aetna Life Ins. Co.*, 597 F. App'x 562, 567 (11th Cir. 2014).[8] Estoppel does not apply "either for oral modifications (as opposed to interpretations) or when the written plan is unambiguous." *Glass,* 33 F.3d at 1347 (citations omitted).

To begin, Horton's argument overlooks a crucial point of this circuit's collateral estoppel doctrine:  that, as a prerequisite, there must be ambiguous provisions in the Plan on which United of Omaha relied to deny Horton's benefit claim.  *See Kane v. Aetna Life Ins.*, 893 F.2d 1283, 1285 (11th Cir. 1990); *see also Braden*, 597 F. App'x at 567.  Not only that, but Horton does not argue that any section of the Plan or its summary is ambiguous.  This is a non-starter.  The LTD policy required Horton to appeal the denial of his LTD within 180 days of receiving his termination letter.  (Doc. 30-7).  The LTD policy does not express that a claimant

---

[8]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

who files an untimely appeal for an adverse benefits determination has the right to sue in federal court to challenge that benefits decision.[9]  Permitting estoppel here—to override the clear terms of the Plan documents—would be inconsistent with this circuit's application of ERISA principles.  *See Jones*, 370 F.3d at 1069.

But even if United of Omaha's *pro forma* "right to sue" text equates to a misstatement of Eleventh Circuit precedent, because Horton had long missed the deadline for filing an appeal when he received the letter, that misstatement was not material.  (Doc. 1-7).  Put another way, the "right to sue" language did not to prevent Horton from timely filing an appeal.  Accordingly, because Horton neglected to timely appeal his adverse LTD benefits determination despite an unambiguous LTD policy, the Eleventh Circuit's "very narrow common law doctrine under ERISA for equitable estoppel" does not apply in this matter.  *See Glass*, 33 F.3d at 1347.

## B. Exceptions to Exhaustion Requirement

Horton also posits that "the exhaustion requirement is due to be excused due to exceptional circumstances" because United of Omaha's "denial letters contained insufficient language to inform Mr. Horton of his appeal rights and adverse

---

[9]Even assuming Horton relied on United of Omaha's March 20, 2015 letter, he has failed to cite any authority holding that the inclusion of boilerplate "right to sue" language within a defendant claim administrator's final denial letter, standing alone, later bars that defendant from raising a plaintiff's failure to exhaust as a defense where, pursuant to this circuit's law, Horton failed to exhaust his administrative remedies.  *See, e.g.*, *Katz v. Comprehensive Plan of Group Ins.*, 197 F.3d 1084, 1090 (11th Cir. 1999) (finding that representations that contradict unambiguous provision do not give rise to estoppel, even if relied upon to an insured's detriment).

consequences of failure to exhaust." (Doc. 35, p. 17). In addition, Horton argues that his hospitalization should excuse the exhaustion requirement. (Doc. 35, pp. 22–25; Doc. 36-1). The court is not convinced by either argument.

While, as a general rule, the Eleventh Circuit strictly mandates that ERISA plaintiffs exhaust available administrative remedies before filing suit in court, there are two exceptions: when "resort to administrative remedies would be futile or the remedy inadequate, or where a claimant is denied meaningful access to the administrative review scheme in place." *Perrino v. Southern Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315–16 (11th Cir. 2000). "The decision of a district court to apply or not apply the exhaustion of administrative remedies requirement for ERISA claims is a highly discretionary decision which [is] review[ed] only for a clear abuse of discretion." *Id*; *see also Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006).

Aside from being "unwell during a large portion of the LTD appeal period," Horton asserts that two United of Omaha's written communications to him were misleading and prevented him from filing a timely claim: (1) the November 15, 2013 letter, which terminated Horton's LTD benefits; and (2) the December 10, 2013 letter, which informed Horton that he had exhausted all administrative rights with respect to the Life Policies benefits. (Doc. 35, pp. 17, 20–25; Doc. 36-1). This argument is without merit.

As a preliminary matter, the court is faced with two versions of the November 15, 2013 and December 10, 2013 letters.  (Doc. 1-2, pp. 2–7; Doc. 30-9, pp. 26–31; Doc. 1-3; Doc. 30-21, p. 16–18).  While United of Omaha's versions of the letters bear reference lines identifying policies and policy numbers, Horton's versions of the November and December letters do not.  (Doc. 1-2, pp. 2–7; Doc. 30-9, pp. 26–31; Doc. 1-3; Doc. 30-21, p. 16–18).  Nevertheless, both versions are otherwise the same, and in particular, both contain the claim numbers. (Doc. 1-2, pp. 2–7; Doc. 30-9, pp. 26–31; Doc. 1-3; Doc. 30-21, p. 16–18).  The parties resolved this dispute via a joint stipulation that the letters in the administrative record[10] are true and accurate copies of the letters sent to Horton during the review process.  (*See* Doc. 43).  Therefore, for determining whether either letter is ambiguous, that Horton's version is silent with respect to policy numbers is of no moment.

Even without the LTD policy number, the November 15, 2013 letter refers clearly to Horton's LTD benefits.  (Doc. 1-2, pp. 2–7; Doc. 30-9, pp. 26–31).  The letter throughout references the LTD policy six times.  (Doc. 1-2, pp. 2–7; Doc. 30-9, pp. 26–31).  The letter provides Horton's LTD claim number.  (Doc. 1-2, p. 2; Doc. 30-9, p. 26).  The first sentence states that United of Omaha has completed its "review of [Horton's] claim for ongoing Long Term Disability benefits under policy

---

[10] The stipulation of the parties references these letters as documents "United 000308" and "United 001012."  They are Document 30-9, p. 26 and Document 30-21, p. 16, respectively.

GLTD 850F." (Doc. 1-2, p. 2; Doc. 30-9, p. 26). The letter advises Horton that he has "180 days of the date" that he "receive[s] this notice of denial" to appeal United of Omaha's adverse LTD benefits determination. (Doc. 1-2, p. 6; Doc. 30-9, p. 30). Both variants of the November letters make clear that if United of Omaha does not receive Horton's "appeal within 180 days from the date" he received the letter, the "claim determination will be final." (Doc. 1-2, p. 7; Doc. 30-9, p. 31). The letter does not discuss Horton's other policy benefits, much less mention any other policy or claim. (Doc. 1-2, pp. 2–7; Doc. 30-9, pp. 26–31).

Likewise, the December 10, 2013 letter deals unambiguously with the LWOP; that letter upholds United of Omaha's denial of Horton's appeal for life insurance benefits. (Doc. 1-3; Doc. 30-21, p. 16–18). The letter references Horton's LWOP claim number, and the first line indicates that the letter relates to Horton's "appeal for continuation of life insurance benefits." (Doc. 1-3, p. 2; Doc. 30-21, p. 16). Even it is assumed that Horton was confused about the December 10, 2013 letter, because the only appeal that Horton had filed when he received the December letter was for his LWOP benefits, practically speaking, that letter could have referred only to Horton's LWOP claim. (Doc. 30-21, p. 18). Indeed, in his LWOP appeal notice, Horton cited explicitly to both of the Life Policies and their numbers; the subject line says, "Appeal the Denial of Life Insurance;" and the first line asserts, "Please accept this as my appeal to the life insurance denial from Mutual of Omaha Life

18

Insurance Company!"  (Doc. 30-21, p. 66).  In Horton's appeal, his delineation of his life insurance benefits and the absence of any other reference to other benefits belies his excusal argument.

Even assuming that both the November 15, 2013 and December 10, 2013 letters technically violated ERISA, Eleventh Circuit precedent "makes clear that the exhaustion requirement for ERISA claims should not be excused for technical violations of ERISA regulations that do not deny plaintiffs meaningful access to an administrative remedy procedure through which they may receive an adequate remedy."  *Perrino*, 209 F.3d at 1317.  There is no evidence demonstrating that United of Omaha's conduct militated against Horton's ability to purse a timely appeal to challenge the discontinuance of his LTD benefits.  Rather, by singling out portions of United of Omaha's letters and characterizing them as ambiguous, Horton attempts to manufacture a factual dispute where there is no such dispute.  The letters, when read in context, are clear.  Allegations based on Horton's misreading of United of Omaha's letters are not sufficient to trigger an exception to ERISA's exhaustion requirement.  Nor do they establish factual issues to be resolved by a jury.  Therefore, as it relates to United of Omaha's November 15, 2013 and December 10, 2013 letters, the court cannot excuse Horton from ERISA's exhaustion requirement.

Alternatively, Horton argues that his hospitalization interfered with his ability to timely appeal United of Omaha's denial of his LTD benefits because "during the

entire appeal period he was under the care of physicians and taking medication that affected his cognitive abilities as well as his memory." (Doc. 35, p. 23; Doc. 36-1). On this basis, Horton argues that "such failure is certainly excusable." (Doc. 35, pp. 22–23). This argument stands on no better footing. For starters, Horton has not cited, nor has the court found, any Eleventh Circuit case law acknowledging a hospitalization exception to the ERISA exhaustion requirements. Because the Eleventh Circuit has not announced such an exception, this court is not in a position to do so here. *Perrino*, 209 F.3d at 1318. While the court sympathizes with Horton's health complications, the court must decline Horton's invitation to forge an uncharted path in his favor. *See also Springer v. Wal–Mart Assocs.' Group Health Plan*, 908 F.2d 897, 900 n. 1 (11th Cir. 1990) (declaring that "the district court is bound by controlling Eleventh Circuit precedent").[11]

## IV.   CONCLUSION

For the foregoing reasons, the court finds Horton's challenge to the denial of his long-term disability benefits claim is final and binding, and his claim is barred

---

[11]Even if Horton's hospitalization theory constituted a recognized exception to the ERISA exhaustion rule in the Eleventh Circuit, Horton has adduced scant evidence that he would qualify for such an exception. Horton alleges that he was hospitalized for "one week in May 2014" and "almost half of July 2014." (Doc. 35, p. 22). The deadline for Horton's LTD claim was May 14, 2014. (Doc. 1-7; Doc. 30-9, pp. 1–5). Thus, based on Horton's factual allegations, the court would find little reason to consider Horton's hospitalization sufficient for excusing the ERISA exhaustion requirement, even if such an exception was recognized.

from further review.  United of Omaha's motion for summary judgment (doc. 32) is due to be **GRANTED**.  An appropriate order will be entered separately.

     **DONE**, this the 24th day of March, 2017.

                              **JOHN E. OTT**
                              Chief United States Magistrate Judge